UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA CARD,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RALPH LAUREN CORPORATION, et al.,<br><br>　　　　Defendants. | Case No.18-cv-02553-JSC<br><br>**ORDER RE: MOTION TO DISMISS; MOTION TO AMEND; AND ADMINSTRAION MOTION FOR RELIEF FROM SCHEDULING ORDER**<br><br>Re: Dkt. Nos. 10, 15, 18 |

Plaintiff Victoria Card filed this civil action in San Francisco Superior Court alleging various claims arising out of a business arrangement between Plaintiff and Defendants the Ralph Lauren Corporation, Ralph Lauren Company West, LLC, and E.J Victor Inc. Defendants thereafter removed the action to federal court based on diversity of citizenship and federal question jurisdiction, 28 U.S.C. §§ 1331, 1332. (Dkt. No. 1.) Defendants then moved to dismiss the claim for failure to state a claim. (Dkt. No. 10.) Plaintiff failed to timely file an opposition or statement of non-opposition, but the parties subsequently agreed to a new briefing schedule. (Dkt. No. 13.) Plaintiff again missed the deadline to file her opposition, and instead, filed a motion to amend her complaint three days after her opposition brief was due. (Dkt. No. 15.) Defendants' motion to dismiss, Plaintiff's motion to amend, and Plaintiff's motion for administrative relief from the case management schedule are now pending before the Court. Having considered the parties' briefs, and their joint case management conference statement, the Court concludes that oral argument is unnecessary. *See* N.D. Cal. Civ. L.R. 7-1(b). For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for leave to amend, and DENIES Defendants' motion to dismiss and Plaintiff's motion for administrative relief as MOOT.[1]

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 9.)

## BACKGROUND

### A. Allegations of the Complaint

The Court briefly summarizes the allegations of the complaint. While Plaintiff's proposed First Amended Complaint added several pages of additional factual allegations, the general facts as alleged between the two complaints are consistent. The citations here are to the proposed First Amended Complaint. (Dkt. No. 16-2.)

Plaintiff Victoria Card owned a business in San Francisco from 2006 through 2015 called Pacific Heights Place. (*Id*. at ¶ 2.) Prior to that, Plaintiff owned a business from 2001 through 2005 called Bluestone Main. (*Id*.) Both businesses sold home furnishing products such as furniture, lighting, fabrics and accessories. (*Id*. at ¶ 1.) From 2001 to 2015, Plaintiff had a "contractual and partnership relationship" with the Ralph Lauren Corporation to act as an approved dealer of Ralph Lauren Home products. (*Id*. at ¶ 8.) In 2015, Ralph Lauren terminated Plaintiff's account "thereby killing Plaintiff's business, which she had built up over 14 years, thereby causing her great economic and non-economic damages." (*Id*.) This termination was preceded by a series of interactions between Plaintiff and various representatives of Ralph Lauren as well as entities associated with the Ralph Lauren Corporation including E.J. Victor, which manufactures Ralph Lauren's products. (*Id*. at ¶¶ 5, 20-83.)

For example, in 2011, Plaintiff became aware that Defendants were offering discounts to other vendors such as One Kings Lane that they was not offering to her which led to a loss of business in 2012. (*Id*. at ¶¶ 24-28.) When Plaintiff raised this issue, Defendants agreed to allow Plaintiff to buy product at the same price it was offering to One Kings Lane. (*Id*. at ¶ 29.) However, in November 2012, Plaintiff discovered that Defendants were not honoring this agreement. (*Id*. at ¶ 35.) Around this same time, E.J. Victor imposed a new requirement that Plaintiff pre-pay 50 percent of any order. (*Id*. at ¶ 34.)

Then, in April 2013, Plaintiff received an email from Ralph Lauren advising her that she was no longer allowed to sell Ralph Lauren products on her website outside of "authorized distribution channels" and imposing other restrictions. (*Id*. at ¶ 37.) Six months later, Plaintiff was told by a representative from a lighting company with whom she did business that he had

heard her account with Ralph Lauren Home had been closed and that he was going to close her account with the lighting company as a result. (*Id*. at ¶¶ 41-42.) Late 2013, Plaintiff received a call from William Li of Ralph Lauren during which he raised his voice and threatened to close her account three different times. (*Id*. at ¶¶ 47-48.) Plaintiff then contacted Ian Sears, the President of Ralph Lauren Home, to follow up on her call with Mr. Li. (*Id*. at ¶53.) Mr. Sears suggested that Ralph Lauren had the right to cancel her account because she had not upheld the high standard of quality and prestige associated with Ralph Lauren products and her website continued to contain impermissible information regarding Ralph Lauren products. (*Id*. at ¶ 54.) In response, Plaintiff contacted David Lauren and a few days later Plaintiff's account was "re-opened" pending re-application. (*Id*. at ¶¶ 55-56.) Although Plaintiff completed the reapplication, she questioned whether any other retailer had been put through such an onerous process. (*Id*. at ¶¶ 60-61.)

A year later, in November 2014, Plaintiff published her new revised website "to great praise by the Lauren Defendant partners." (*Id*. at ¶ 67.) However, Defendants did not authorize Plaintiff to use the name "Ralph Lauren" in advertising, which "began swiftly to affect Plaintiff's business towards a standstill." (*Id*. at ¶¶ 70-73.)

In May of 2015, Plaintiff received an email from Nicholas Manville, Ralph Lauren Home's Vice President of Global Business Development and Merchandising, informing her that her account was closed because they had re-evaluated their wholesale and e-commerce network and decided to make changes to their distribution. (*Id*. at ¶ 76.)

**B. Procedural Background**

Two years later, in May 2017, Plaintiff filed suit in San Francisco Superior Court. (Dkt. No. 1-1.) Plaintiff alleged 11 claims for relief against Defendants, the Ralph Lauren Corporation, Ralph Lauren Company West, LLC, and E.J Victor Inc., including claims for: (1) breach of implied contract; (2) promises without intent to perform; (3) intentional misrepresentation; (4) breach of the covenant of good faith and fair dealing; (5) violation of fiduciary obligations; (6) intentional wrongdoing in violation of California Civil Code § 1708; (7) intentional infliction of emotional distress; (8) discrimination in violation of the Unruh Act; (9) violation of California Business and Professions Code § 17200; (10) violation of the Robinson-Patman Act; and (11)

3

RICO.

Defendants were not served until March of 2018 at which point they removed this action to federal court based on diversity and federal question jurisdiction. (Dkt. No. 1.) Upon removal, Defendants moved to dismiss the complaint for failure to state a claim. (Dkt. No. 10.) Plaintiff filed to file a timely opposition, but the parties stipulated to an amended briefing schedule. (Dkt. No 13.) Plaintiff again failed to file her opposition, and instead, three days after her opposition was due she filed a motion to amend the complaint. (Dkt. No. 15.) Plaintiff's amended complaint pleads 11 claims for relief including: (1) breach of implied contract; (2) promises without intent to perform; (3) intentional misrepresentation; (4) breach of the covenant of good faith and fair dealing; (5) violation of fiduciary obligations; (6) interference with prospective advantage; (7) intentional infliction of emotional distress; (8) violation of the Robinson-Patman Act; (9) RICO; (10) discrimination in violation of the Unruh Act; and (11) violation of California Business and Professions Code § 17200.

The motion to amend is fully briefed. Plaintiff never filed an opposition to the motion to dismiss, but did file an ex parte request for leave to file a sur-reply in opposition after Defendants filed their reply. (Dkt. No. 22.) This ex parte request is DENIED as Plaintiff had ample opportunity to file an opposition to the motion to dismiss. Around the same time she filed the ex parte motion, Plaintiff filed an administrative motion for relief from the scheduling order. (Dkt. No. 18.)

**DISCUSSION**

There are three motions currently pending: (1) Defendants' motion to dismiss; (2) Plaintiff's motion to amend the complaint; and (3) Plaintiff's administrative motion for relief from the case scheduling order. The administrative motion is now moot as the parties have agreed to proceed with initial disclosures and that discovery will be stayed pending disposition of the pending motions. (Dkt. No. 25.) Of the two remaining motions, the Court first addresses the motion to amend because, if that motion is granted, then the motion to dismiss will be moot.

### A. Plaintiff's Motion to Amend

Pursuant to Federal Rule of Civil Procedure 15(a), once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court should "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), and "[t]his policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003). In the absence of an "apparent reason," such as undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 986 (9th Cir. 1999). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital,* 316 F.3d at 1052. "The party opposing leave to amend bears the burden of showing prejudice[,]" *Sherpa v. SBC Telecomm'cns, Inc.,* 318 F.Supp.2d 865, 870 (N.D. Cal. 2004), and generally of demonstrating why leave to amend should not be granted, *Genentech, Inc. v. Abbott Labs.,* 127 F.R.D. 529, 530–31 (N.D. Cal. 1989).

Here, there is no dispute that four of the five factors—undue delay, bad faith, prejudice, and previous amendment—weigh in favor of amendment. While Plaintiff delayed in filing her amended complaint until after the time for an amendment as of right, there is no suggestion that the delay was in bad faith. Rather, Plaintiff contends that upon review of the motion to dismiss, she decided that she should amend her complaint to add additional details bolstering her claims, but that it took longer than expected. Likewise, given that the case is in its early stages, any prejudice to Defendants is minimal, although the Court notes that Plaintiff's repeated failure to timely comply with deadlines has needlessly compounded motion practice on these matters. Finally, Plaintiff has not previously amended her complaint.

Defendants nonetheless insist that leave to amend would be futile because Plaintiff's proposed amended complaint fails to cure many of the original complaint's defects. The Court agrees in part. "The proper test to be applied when determining the legal sufficiency of a proposed

amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011), on reh'g en banc, 681 F.3d 1041 (9th Cir. 2012) (internal citation and quotation marks omitted). Thus, an amended "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal citation and quotation marks omitted). Futile amendments, that is, proposed amendments to a complaint that do not state a claim, should not be permitted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court addresses the futility of amendment of each of Plaintiff's claims separately.

### 1) First Claim: Breach of Implied Contract

"A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008). The "essential elements" of a breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968). Plaintiff alleges that Defendant Victor agreed to sell excess product to her and notify her of discounts to others, that she accepted the agreement and bought millions of dollars of products, that both sides performed under the contract for 15 years, and that Defendants breached the agreement by imposing "uniquely burdensome requirements and unique competitive disadvantages...without legal reason or reasonable justification," by destroying her business, and by failing to honor promises to continue to do business with Plaintiff. (Dkt. No. 16-2 at ¶¶ 86-88.) This is sufficient to plausibly state a claim based on breach of implied contract. Plaintiff is granted leave to amend her implied breach of contract claim.

### 2) Second and Third Claims: Promises without Intent to Perform and Intentional Misrepresentation

A claim of deceit by false promise arises under Civil Code section 1709 which provides

that "one is liable for fraudulent deceit if he 'deceives another with intent to induce him to alter his position to his injury or risk....'" *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1059 (2012) (quoting Cal. Civ. Code § 1709). "The essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230–31 (2013). Fraud claims are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must include the "who, what, when, where, and how" of the fraud. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Ultimately, "[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Plaintiff alleges that Defendants falsely represented that "if she continued to produce as she had always done" they "would support her" with the intent that she rely on the representations which she did to her detriment. (Dkt. No. 16-2 at ¶¶ 91-101.) While these allegations are sufficient to give rise to a breach of an implied contract claim, they are not sufficient under Rule 9(b) to give rise to a fraud claim. Plaintiff must do more than recite the elements of a claim, she must identify when the misrepresentation occurred, what the actual misrepresentation was, and who made it, as well as that it was knowingly false and made with the intent to deceive. Because Plaintiff's amended complaint fails to do so, the proposed amendment is futile.

**3) Fourth Claim: Breach of the Covenant of Good Faith and Fair Dealing**

Every contract possesses an implied covenant of good faith and fair dealing in which "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988). When a plaintiff brings both a breach of contract and a breach of the implied covenant claim, the latter will be superfluous and subject to dismissal if both claims cite the same underlying breach. *See Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (citation omitted); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). A plaintiff may, however, bring both

claims if they are based on two different breaches. *Id.*; *see also Daly v. United Healthcare Ins. Co.*, No. 10-CV-03032-LHK, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010).

Plaintiff's breach of the covenant of good faith and fair dealing claim is based on the same allegations as the breach of contract allegations, as well as allegations that Defendants treated Plaintiff differently from other retailers including by placing additional requirements on Plaintiff, blocking the use of the Ralph Lauren name in Plaintiff's online advertising, emotionally abusive treatment, and threatening to take false action on false charges. While some of these additional allegations may overlap with Plaintiff's breach of contract claim (for example, to the extent that the parties' alleged implied contract allowed Plaintiff to advertise that she was a Ralph Lauren retailer, any breach of that agreement would be actionable in the context of the breach of contract claim), it is plausible that some of the allegations arise out a separate agreement that the parties should conduct themselves in good faith. "[I]n the context of the insurance contract, it has been held that the insurer's responsibility to act fairly and in good faith with respect to the handling of the insured's claim is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation ... under which the insurer must act fairly and in good faith in discharging its contractual responsibilities." *Careau*, 222 Cal. App. 3d at 1394–95 (internal citation and quotation marks omitted). Here, taking the allegations as true—as the Court must at this stage—Plaintiff's allegation that Defendants placed requirements on her that they did not on other retailers, and that these requirements were punitive and had the effect of destroying Plaintiff's business, is sufficient to allege "a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Id.* at 1395.

Plaintiff's motion to amend this claim is therefore granted.

**4) Fifth Claim: Violation of Fiduciary Obligations**

The elements of a claim for a breach of fiduciary duty are: (1) existence of a fiduciary duty, (2) breach of the fiduciary duty, and (3) damages proximately caused by the breach. *See Tribeca Cos., LLC v. First Am. Title*, 239 Cal. App. 4th 1088, 1114 (2015). Only certain legal relationships trigger automatic fiduciary duties. *See Gilman v. Dalby*, 176 Cal. App. 4th 606, 614

8

(2009). For example, joint ventures, partnerships and agency relationships. *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008). A plaintiff cannot generally "turn an ordinary breach of contract claim into a breach of fiduciary duty." *Gilman*, 176 Cal. App. 4th at 614 (citing *Wolfe v. Superior Court*, 107 Cal. App. 4th 25, 30 (2003)). Fiduciary duties attach to a contractual relationship only when the relationship requires that the fiduciary act with undivided loyalty on behalf of the beneficiary and never profit or advantage from the parties' dealings. *See Wolfe*, 107 Cal. App. 4th at 30.

Although Plaintiff alleges that the parties "expressly entered into a partnership relationship with Plaintiff," she does not allege that Defendants "knowingly undert[ook] to act on behalf and for the benefit of another, or [] enter[ed] into a relationship which imposes that undertaking as a matter of law." *Genentech*, 43 Cal. 4th at 386 (internal citation and quotation marks omitted). (Dkt. No. 16-2 at ¶ 108.) Plaintiff has thus not alleged facts which plausibly suggest that the parties entered into a partnership which gave rise to fiduciary obligations beyond the contractual relationship alleged here. Accordingly, allowing the proposed amendment of this claim would be futile.

### 5) Sixth Claim: Interference with Prospective Advantage

The elements of a claim for intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 n.6 (2004) (citation omitted). In addition, "a defendant's conduct must be 'wrongful by some legal measure other than the fact of interference itself.'" *MJC Am., Ltd. v. Gree Elec. Appliances, Inc. of Zhuhai*, 2014 WL 12600963, at *4 (C.D. Cal. Jan. 21, 2014) (quoting *Della Penna v. Toyota Motor Sales, USA, Inc*., 11 Cal. 4th 376, 393 (1995)). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1159 (2003).

Plaintiff alleges that the same conduct which gives rise to her breach of implied covenant of good faith and fair dealing gives rise to an action for intentional interference with prospective advantage because Defendants knew their conduct would "interfere with the economic relationship that existed between PLAINTIFF and the clientele she had built up over the course of approximately 15 years." (Dkt. No. 16-2 at ¶ 115.) These allegations are not sufficiently specific to state a claim because Plaintiff must identify a specific relationship with which Defendants have allegedly interfered. "Without an existing relationship with an identifiable buyer, [plaintiff]'s expectation of a future sale was 'at most a hope for an economic relationship and a desire for future benefit.'" *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 516 (2017) (quoting *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996)). Amendment of this claim based on the presently alleged facts would be futile.

**6) Seventh Claim: Intentional Infliction of Emotional Distress**

The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (internal citation omitted). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Id.* at 571.

Plaintiff alleges that Defendants engaged in a conspiracy "intended to intimidate and terrify PLAINTIFF" that was "extreme and outrageous." (Dkt. No. 16-2 at ¶ 120.) This is not sufficient to state a claim for intentional infliction of emotional distress. "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (internal citation and quotation marks omitted) (concluding that threats that, unless plaintiff granted the defendant sexual favors, he would use his authority as a trustee of the trust set up for plaintiff's son to deny her requests for funds, "fall far short of conduct that is so outrageous" that it exceed[s] all bounds of that usually tolerated in a civilized community.") (internal citation and quotation

marks omitted). Plaintiff has not identified the statements which give rise to her intentional infliction of emotional distress claim beyond describing them as containing "hatefulness, viciousness, animosity, and malice." (Dkt. No. 16-2 at ¶ 48.) To state a claim, Plaintiff must identify conduct that "exceeds all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal.4th at 1050–51. Because she has failed to do so, the proposed amendment of this claim is futile.[2]

### 7) Eighth Claim: Violation of the Robinson-Patman Act

The Robinson–Patman Act of 1936, 15 U.S.C. § 13, prohibits price discrimination that is likely to have an anticompetitive effect. In essence, this Act makes it unlawful for a seller to discriminate in price between purchasers of similar commodities when the price discrimination results in competitive harm. *See, e.g.*, *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584 (2d Cir.1987). Accordingly, to state a claim under the Robinson–Patman Act, a plaintiff must allege: (1) two or more contemporaneous sales by the same seller; (2) at different prices; (3) of commodities of like grade and quality; (4) the discrimination had the requisite anticompetitive effect; and (5) the discrimination caused injury to the plaintiff. *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir.1975).

The Robinson–Patman Act "does not ban all price differences charged to different purchasers of commodities of like grade and quality[]; rather, the Act proscribes price discrimination only to the extent that it threatens to injure competition." *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006) (internal citation and quotation marks

---

[2] Defendants also contend that this claim is barred by the statute of limitations. The statute of limitations for the intentional infliction of emotional distress is two years. *See* Cal. Civ. Proc. Code § 335.1 (identifying two-year statute of limitations); *Pugliese v. Superior Court*, 146 Cal. App. 4th 1444, 1450 (2007)("Causes of action for assault, battery and intentional infliction of emotional distress are governed by the two-year statute of limitations set forth in Code of Civil Procedure section 335.1."). Because the complaint was filed May 8, 2017, the offensive phone call—which occurred in November 2013—cannot be the basis for the intentional infliction of emotional distress claim. (Dkt. No. 16-2 at ¶ 47). However, Plaintiff contends that some of the conduct of which she complains occurred within two years of the filing of the complaint. (Dkt. No. 30 at 13:8-9.) The Court is uncertain how this can be the case given that the complaint alleges that Ralph Lauren terminated its relationship with Plaintiff on May 8, 2015—exactly two years prior to the filing of the complaint. (*Id*. at ¶ 76.) Plaintiff will nonetheless be granted leave to amend this claim to the extent that she has a good faith basis to allege outrageous conduct that occurred within the two-year statute of limitations.

11

omitted). Secondary line cases such as this "involve price discrimination that injures competition among the discriminating seller's customers (here, [Ralph Lauren wholesalers]); cases in this category typically refer to 'favored' and 'disfavored' purchasers." *Id*. "A hallmark of the requisite competitive injury, our decisions indicate, is the diversion of sales or profits from a disfavored purchaser to a favored purchaser." *Id*. at 177. Alternatively, plaintiff may allege that a favored competitor received "a significant price reduction over a substantial period of time" to support a permissible inference of competitive injury. *Id*. (internal citation and quotation marks omitted).

Plaintiff alleges that Defendants "lessened competition by greatly disadvantaging and thereby injuring a particularly successful competitor," that Defendant gave "unfair discounts" to third party competitors "which directly cost PLAINTIFF sales and growth" because customers saw the lower prices offered by Plaintiff's competitors. (Dkt. No. 16-2 at ¶ 127.) As pled, Plaintiff's claim lacks the specificity necessary to plead a claim under the Robinson–Patman Act. Other than Plaintiff's vague allegation that Defendants gave unfair discounts to her competitors, Plaintiff has not identified the discounts, that they were for the same or comparable products, that they were contemporaneous, or that they had an anti-competitive effect. Plaintiff cannot simply recite the elements of a claim, but rather, must provide sufficient factual allegations so that Defendants have fair notice of the claims against them. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that while a complaint "does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level."); *see also GVF Cannery, Inc. v. California Tomato Growers Ass'n, Inc*., 511 F. Supp. 711, 717 (N.D. Cal. 1981) ("bare, conclusory allegation does not set forth a basis for relief under the Act.") This is particularly true for a Robinson–Patman Act claim because the Act "proscribes price discrimination only to the extent that it threatens to injure competition." *Volvo*, 546 U.S. at 176. Accordingly, the proposed amendment of this claim is futile.

### 8) Ninth Claim: RICO

The civil RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a civil RICO claim, a plaintiff must allege facts showing: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks and citation omitted).

Plaintiff's RICO claim appears predicated on her allegations that Defendants gave unfair discounts to other retailers including One Kings Land and Bloomingdales and Defendants "whipsaw[ed]" Plaintiff with contradictory communications. (Dkt. No. 16-2 at pp 132.) Plaintiff lists a series of communication which she alleges constitute the predicate acts. (*Id.*) Plaintiff's allegations fail to state a RICO claim. In particular, Plaintiff has failed to allege the members of the enterprise or the racketeering activity. While she alleges a pattern of racketeering activity under 18 U.S.C. § 1961(5), based on violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), she has failed to allege facts that support a plausible inference that Defendants' conduct violates these statutes; instead, Plaintiff has merely quoted the statutes. To state a claim, Plaintiff must plead conduct which would constitute mail or wire fraud, or another offense specified in 18 U.S.C. § 1961(1).

The Court thus concludes that leave to amend Plaintiff's RICO claim based on the present allegations would be futile.

### 9) Tenth Claim: Discrimination

Plaintiff's tenth claim for relief alleges that Defendants violated the Unruh Civil Rights Act under California Civil Code §§ 51, 51.5. California Civil Code § 51 provides, in general terms, that all persons are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. *Id.*; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir.), opinion amended on denial of reh'g, 275

F.3d 1187 (9th Cir. 2001). California Civil Code § 51.5 prohibits a business establishment from discriminating against any person because of their sex. *Id*. To establish a claim for violation of the Unruh Act, with an exception not relevant to the facts of this lawsuit, a plaintiff must prove intentional discrimination by a business establishment. *See Cohn v. Corinthian Colleges, Inc.*, 169 Cal. App. 4th 523, 528 (2008) ("The Unruh Act requires intentional discrimination to protect against "all unreasonable, arbitrary, or invidious discrimination.").

Plaintiff alleges that Defendants discriminated against her on the basis of her gender and ethnicity by engaging in "extraordinarily harsh and rude direct communications," making "baseless complaints," and favoring other vendors such that "the only conclusion that can reasonably be drawn is that the treatment…could only be explained by animus toward her immutable characteristics of gender, and apparent nationality and sexual orientation." (Dkt. No. 16-2 at ¶ 144.) These allegations are insufficient to state a claim for violation of the Unruh Act. Plaintiff must "state in [her] complaint nonconclusory allegations setting forth evidence of unlawful intent." *Grier v. Brown*, 230 F. Supp. 2d 1108, 1120 (N.D. Cal. 2002) (internal citations and quotations omitted) (dismissing Unruh Act claims where plaintiff pled that defendant "discriminated against them" and "intended to deprive them" of their civil rights, and noting that the Unruh Act and the Equal Protection Clause require the same showing of discriminatory intent). Plaintiff's FAC does not include factual allegations that plausibly suggest such intent.

Accordingly, leave to amend Plaintiff's Unruh Act claim based on the present allegations would be futile.[3]

**10) Eleventh Claim: California Business and Professions Code § 17200**

Plaintiff's eleventh claim for relief is for violation of California's Unfair Competition Law, Business and Professions Code § 17200 et seq. ("UCL"). To state a claim under the UCL, a

---

[3] Defendants also insist that Plaintiff's Unruh Act claim is barred by the one-year statute of limitations. The actual statute of limitations for Unruh Act claims is somewhat unsettled. *See Kemp v. Regents of Univ. of Cal.*, No. C-09-4687 PJH, 2010 WL 2889224, at *6 (N.D. Cal. July 22, 2010) (discussing split within the California appellate courts and the absence of Ninth Circuit or California Supreme Court authority on point). Because this issue has not been fully briefed and the basis for Plaintiff's discrimination claim is unclear, the Court declines to address this issue now; however, the parties should address this issue should Plaintiff amend this claim.

plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To succeed on a UCL claim under any of these theories, a plaintiff must establish that the defendant engaged in one of the practices that the statute prohibits and that, as a result of that conduct, he or she suffered actual injury. *Marolda v. Symantec Corp.*, 672 F.Supp.2d 992, 1003 (N.D. Cal. 2009).

Plaintiff alleges that Defendants violated the UCL through "the unfair business practices alleged hereinabove, including but not limited to the conduct set forth in ¶s 24, 26. 28, 30-35, 37-44, 36, 52, 56-57, 60-62, 64 and 69-78." (Dkt. No. 16-2 at ¶ 151.) Plaintiff's general reference to 21-pages of factual allegations is insufficient to state a claim under the UCL. "[W]ith respect to business-competitor cases, to state a claim under the UCL's 'unfair' prong the alleged unfairness must 'be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999) (an act or practice is "unfair" under the UCL only if the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."). Plaintiff has not tethered her UCL claim to a violation of antitrust laws. To the extent that Plaintiff seeks to tether it to her price discrimination or RICO claims, because the Court has concluded that those claims are inadequately pled, the UCL claim necessarily fails as well. *See Hicks v. PGA Tour, Inc.*, 165 F.Supp.3d 898, 911 (N.D. Cal. Feb. 9, 2016) ( "[W]here the same conduct alleged to be unfair under the UCL is also alleged to be a violation of another law, the UCL claim rises or falls with the other claims.") (internal citation omitted).

Accordingly, the proposed amendment to Plaintiff's UCL claim is futile and is denied.

\*\*\*

The Court thus grants the motion to amend with respect to Plaintiff's first claim for breach of implied contract and her fourth claim for breach of the implied covenant of good faith and fair dealing. The motion for leave to amend is denied with respect the remainder of Plaintiff's proposed claims because as currently pled amendment would be futile. However, because the

15

Court cannot hold that the claims cannot be saved by further amendment, Plaintiff is granted leave to amend her second, third, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh claims, but only to the extent that she has a good faith basis consistent with Federal Rule of Civil Procedure 11 to do so. *See Nordyke v. King*, 644 F.3d 776, 788–89 (9th Cir. 2011), on reh'g en banc, 681 F.3d 1041 (9th Cir. 2012) (finding that even if a court denies leave to amend based on futility, it should grant further leave to amend if the proposed complaint could be saved by amendment). While the Court cannot say with certainty that no viable amendment is possible, these claims appear farfetched and merely an as-of-yet unsuccessful attempt to turn an ordinary contract dispute into a tort action.

### B. Defendant's Motion to Dismiss

Having granted in part and denied in part Plaintiff's motion to amend her complaint, the prior version of the complaint on which Defendants' motion to dismiss is based is no longer operative. The motion to dismiss is therefore denied a moot. This denial is without prejudice to the filing of a new motion to dismiss should Plaintiff elect to file a second amended complaint.

### CONCLUSION

For the reasons stated above, Plaintiff's motion to amend the complaint the complaint is GRANTED IN PART and DENIED IN PART. (Dkt. No. 15.) Defendants' motion to dismiss is DENIED AS MOOT. (Dkt. No. 10.) Plaintiff's administrative motion regarding case scheduling is also DENIED AS MOOT. (Dkt. No. 18.)

Within 21 days, Plaintiff shall either file a further amended complaint or a statement that she intends to stand on her First Amended Complaint and its two claims (breach of implied contract and breach of the implied contract of good faith and fair dealing). The case management conference scheduled for August 30, 2018 is continued to September 27, 2018 at 11:00 a.m. One week before the conference that parties shall submit a new joint case management conference statement that includes a proposed case schedule and a proposal for early ADR.

This Order disposes of Docket Nos. 10, 15, and 18.

**IT IS SO ORDERED.**

Dated: August 29, 2018

                                                                         _____
                                                                         JACQUELINE SCOTT CORLEY
                                                                         United States Magistrate Judge