UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VICTORIA CARD,

              Plaintiff,

    v.

RALPH LAUREN CORPORATION, et al.,

              Defendants.

Case No.  18-cv-02553-JSC

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 148

      Victoria Card sues the Ralph Lauren Corporation, Ralph Lauren Company West, LLC, and E.J Victor Inc (Defendants) for their May 2015 termination of a business relationship.[1] Defendants' motion for summary judgment is now pending before the Court.  (Dkt. No. 148.[2]) After carefully considering the parties' briefs and the relevant legal authority, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), VACATES the September 29, 2021 hearing date, and GRANTS the motion for summary judgment.  Plaintiff has not identified evidence sufficient to create a genuine dispute of fact regarding her contract-based claims or her Robinson-Patman Act claim; Defendants are therefore entitled to judgment on these claims as a matter of law.

<div align="center">

**SUMMARY JUDGMENT EVIDENCE**

</div>

      In 2007, Victoria Card "opened a full, high-end furniture store, focused more, but not entirely, on [Ralph Lauren Home] RLH products" in San Francisco called Pacific Heights Place.

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6 & 9.)

[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

(Dkt. No. 165 at ¶ 2.)  Pacific Heights Place operated as a brick and mortar store selling home furnishing products such as furniture, lighting, fabrics and accessories. (*Id*.)  Plaintiff launched an accompanying website in 2008.  (*Id*.)  Plaintiff offered "extraordinary personal service" to her customers including

> (a) mixing and matching various RLH Products to suit the client's needs and taste, (b) helping customers to furnish whole rooms, and even their entire home, (c) following through against factory delays and/or furniture that was damaged or otherwise compromised on arrival to the customer, and (d) securing the highest quality and efficiency white-glove delivery.

(*Id*.)

During this period, Ralph Lauren licensed the RLH brand and related trademarks to E.J. Victor for the manufacture and sale of RLH furniture.  (Dkt. No. 147-4 at ¶ 2; Dkt. No. 174-4, Ex. A.)  According to E.J. Victor's Chief Creative Officer and Chairman of the Board, John Jokinen, E.J. Victor did not "enter into distribution agreements or long-term contracts with resellers or customers. Rather, each purchase order gives rise to a transaction-specific contract for particular items of furniture. Upon acceptance of a purchase order, E.J. Victor manufactures and ships the item(s) to the reseller, which pays for and sells the item to the reseller's customer."  (Dkt. No. 174-4 at ¶ 2.)  Under their business model, "[d]efendants can stop accepting new furniture orders from a reseller at any time, for any reason, or no reason. Similarly, resellers can stop placing new orders for furniture at any time, for any reason, or no reason."  (*Id*. at ¶ 3.)

Plaintiff had a reseller account with Defendants from 2007 to 2015 and purchased several thousands of dollars—according to Plaintiff, a half a million dollars—in merchandise from Defendants over those years.  (Dkt. No. 148-1, Card Depo. at 251:2-3.)  Plaintiff's account was a full-price, rather than off-price account.  (Dkt. No. 148-1, Colgan Depo. at 25:5-9.)  Full-price accounts, such as Plaintiff's, were only allowed to sell at discounts greater than 30 percent off the Manufacturer's Suggested Retail Price (MSRP) with prior authorization from Defendants  and such requests were considered on a case-by-case basis.  (Dkt. No. 147-4 at ¶ 4.)  Defendants' witnesses testified that during the period in question, it only had two off-price accounts: One Kings Lane and TJX Companies, which were "used specifically to liquidate excess inventory."

1  (Dkt. No. 147-4 at ¶ 5; Dkt. No. 148-1, Coglan Depo. at 24:6-14.)

2       In November 2013, Plaintiff received an email from Carly Conelli at Ralph Lauren

3  notifying her that "your account is not approved and we can no longer take any new order[s] from

4  you." (Dkt. No. 166-10 at 4.)  In response to Plaintiff's email objecting to her account closure, Ian

5  Sears, the President of RLH, emailed Plaintiff stating, in part, that Plaintiff had previously been

6  notified that "the  online sale of Ralph Lauren Home products by Pacific Heights Place on its

7  website has not been authorized by our company" and although Plaintiff was provided with the

8  "formal application for authorization of online sales," Plaintiff did not submit such an application.

9  Because her unauthorized online sale of products had continued despite the lack of authorization,

10  "Ralph Lauren Home and its licensees will be discontinuing sales of Ralph Lauren Home products

11  to Pacific Heights Place." (Dkt. No. 167-1.)  Plaintiff responded that she had never received a

12  formal application, she was unaware of the issues, and she sought Mr. Sear's assistance in "getting

13  my account back on track." (Dkt. No. 167-2.)  Mr. Sears responded the following day offering to

14  "defer the discontinuation of [Plaintiff's] account pending [her] completion of [their] account

15  application process." (Dkt. No. 167-3.)  After "a months-long" "cooperative effort" to re-do her

16  website and despite "great praise," Plaintiff was notified on May 8, 2015, that Defendants had "re-

17  evaluated its wholesale and ecommerce network" and terminated "the status of Pacific Heights

18  Place as an authorized Ralph Lauren Home dealer." (Dkt. No. 165 at ¶ 13; Dkt. No. 171-4.)

19                              **PROCEDURAL BACKGROUND**

20       In May 2017, two years after Ralph Lauren terminated the parties' relationship, Plaintiff

21  sued Defendants in San Francisco Superior Court. (Dkt. No. 1-1.) Plaintiff alleged 11 claims for

22  relief: (1) breach of implied contract. (2) promises without intent to perform, (3) intentional

23  misrepresentation, (4) breach of the covenant of good faith and fair dealing, (5) violation of

24  fiduciary obligations, (6) intentional wrongdoing in violation of California Civil Code § 1708, (7)

25  intentional infliction of emotional distress, (8) discrimination in violation of the Unruh Act, (9)

26  violation of California Business and Professions Code § 17200, (10) violation of the Robinson-

27  Patman Act, and (11) RICO. Defendants removed the action to this Court based on diversity and

28  federal question jurisdiction.  (Dkt. No. 1.)

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1     Over the next year and a half, there were several rounds of motion practice regarding the

2  sufficiency of the complaint.  (Dkt. Nos. 32, 39, 47, 49, 58, 67.)  Ultimately, on January 21, 2020,

3  the Court granted in part and denied in part Defendants' motion to dismiss, allowing Plaintiff's

4  contract-based claims to proceed and granting Plaintiff leave to amend her Robinson-Patman Act

5  claim (and the derivative Section 17200 claim).  The Court dismissed the remaining claims with

6  prejudice.  (Dkt. No. 87.)  Plaintiff then filed her now-operative Fourth Amended Complaint.

7  (Dkt. No. 89.)

8     The parties thereafter sought and obtained several extensions of the case schedule.  (Dkt.

9  Nos. 98, 110.)  A week before the close of fact discovery, Plaintiff moved to extend the expert

10  discovery cut-off because she had not served any deposition notices prior to the deadline to do so.

11  (Dkt. Nos. 125, 135.)  The Court granted the motion in part, allowing Plaintiff's untimely Rule

12  30(b)(6) deposition to proceed, but no other depositions.  (Dkt. No. 135.)

13     On July 29, 2021, Defendants filed the now pending motion for summary judgment.  (Dkt.

14  No. 148.)  After receiving multiple extensions of time to submit her opposition to Defendants'

15  motion for summary judgment, Plaintiff submitted her opposition brief late, allegedly due to a

16  plumbing emergency and computer malfunction. (Dkt. Nos. 150, 152, 153, 154.)  Upon review of

17  the opposition brief, the Court concluded that it was deficient in multiple respects, including that it

18  did not include citation or reference to any evidence.  The evidence was instead set forth in

19  Plaintiff's separately filed declaration, in violation of the local rules; the Court thus struck the

20  opposition brief and gave Plaintiff the opportunity to file a compliant brief.  (Dkt. No. 159.)

21  Plaintiff subsequently filed a new opposition brief and Defendants filed their reply.

22                **EVIDENTIARY OBJECTIONS**

23     Both parties filed evidentiary objections in separate pleadings. (Dkt. Nos. 173, 175-1, 175-

24  2.)  These separate filings violate Civil Local Rule 7-3(c) which requires that "[a]ny evidentiary

25  and procedural objections to the motion ... be contained within the [opposition] brief or

26  memorandum." N.D. Cal. Civ. L.R. 7-3(a). "Courts in this district regularly strike separately-filed

27  evidentiary objections and responses for violating Local Rule 7-3." *Go Daddy Operating Co., LLC*

28  *v. Ghaznavi*, No. 17-CV-06545-PJH, 2018 WL 1091257, at *14 (N.D. Cal. Feb. 28, 2018)

(collecting cases re: same). The Court thus STRIKES the parties' separate statements of evidentiary objections. (Dkt. Nos. 173, 175-1, 175-2.)

## DISCUSSION

Defendants move for summary judgment on Plaintiff's four remaining claims: (1) breach of contract – express or implied; (2) breach of the covenant of good faith and fair dealing; (3) violation of the Robinson-Patman Act, 15 U.S.C. § 13; and (4) breach of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. In her opposition brief, Plaintiff concedes that summary judgment is proper on her Section 17200 claim. (Dkt. No. 162 at 30.) Accordingly, this Order focuses on her other three claims.

**A. Breach of Contract**

According to her opposition brief, the gist of Plaintiff's contract theory is as follows:

> Two days after Defendants in fact took a step to terminate Plaintiff's account in November, 2013, Defendants offered, and Plaintiff accepted, both in word and in conduct stretching almost a year, a compromise, basically in form and substance a contract to continue the highly successful business arrangement the parties had previously enjoyed, IF Plaintiff complied with Defendants' demands pertaining to Plaintiff's store and website, with such arrangement continuing as long as Plaintiff would "uphold the high standards for quality and prestige that are associated with our products", and "dependent upon continued satisfaction of (RL and EJV) guidelines".

> Pursuant to that agreement: (a) Three months later, Plaintiff's store was approved, without anything having been done to change it from the date of the agreement, (b) six months after that, the parties 'kicked-off' their extensive, and expensive, cooperative work on re-doing Plaintiff's website, and (c) four months after that, Plaintiff published the completed website, followed the next month by praise, both (i) to her directly, by the RL employee who worked most closely with her on the website (Kwiatkowski), and (ii) in-house, by another involved member of the team (Strassburger), to others at RL involved with the arrangement

(Dkt. No. 162 at 21.) Put simply, Plaintiff contends that the parties formed a contract in November 2013 when Defendants offered to continue their "highly successful business arrangement" with Plaintiff in exchange for Plaintiff making certain changes to her store and website. While not clear, Plaintiff appears to assert that as a result of Plaintiff making those changes, Defendants were required to sell product to her for as long as she wanted.

United States District Court
Northern District of California

1    To establish a breach of contract under California law, a claimant must show: "(1) the

2    contract, (2) the [claimant's] performance or excuse for nonperformance, (3) [the opposing

3    party's] breach, and (4) the resulting damages to [the claimant]." *Rutherford Holdings, LLC v.*

4    *Plaza Del Rey*, 223 Cal. App. 4th 221, 228 (2014). "A cause of action for breach of implied

5    contract has the same elements as does a cause of action for breach of contract, except that the

6    promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers*

7    *Guild of Am., Inc.*, 161 Cal.App.4th 172, 182 (2008).

8    Defendants move for summary judgment on Plaintiff's contract-based claims on the

9    grounds that the evidence does not support a finding of the first required element: that the parties

10   entered into a valid contract—express or implied.  Defendants have met their initial summary

11   judgment burden.  They identify evidence that shows that they did not enter into a long-term

12   agreement to sell product to Plaintiff; namely, deposition testimony and declarations testifying that

13   they did not enter into such an agreement and that they never enter into such agreements with any

14   resellers. *See Nissan Fire & Marine Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir. 2000).  They

15   have also met their initial burden by showing that Plaintiff does not have enough evidence to

16   support a finding that a contract was made.  *See id.*  The burden thus moves to Plaintiff to identify

17   evidence that creates a genuine dispute of fact as to the existence of the alleged agreement.  *See id.*

18   at 1003.  Plaintiff has not met her summary judgment burden.

19   First, Plaintiff does not cite or reference any evidence in support of her contract theory.

20   Indeed, aside from the "FACTS" section at the beginning of Plaintiff's opposition brief, she does

21   not cite any evidence in the remaining 18 pages of her brief, including in support of any of her

22   arguments.  Her brief omits citation to evidence even though in the Court's Order striking her

23   prior opposition brief, the Court specifically advised Plaintiff that "the factual evidence in support

24   of Plaintiff's arguments must be referenced in her brief of no more than 25 pages and the reference

25   should cite with specificity where in the record that evidence is found."  (Dkt. No. 159 at 1.)  It is

26   not the task "of the district court, to scour the record in search of a genuine issue of triable fact.

27   We rely on the nonmoving party to identify with reasonable particularity the evidence that

28   precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Here, as in

*Keenan*, even in the portion of the brief which cites to evidence, Plaintiff's citation format is nearly indecipherable, *see, e.g.*, Dkt. No. 162 at 7:3-4 (citing "Π-Dc,¶s18-Xb-A, 19-Xb-B, 21,Xb-D, 27-Xb-I, 28-Xb-J & 29-Xb-K")), and "[w]here this court has succeeded in locating the documents cited, it has repeatedly found that [Plaintiff] has referred us to conclusory allegations made in her own affidavits and statements of fact presented to the district court, and to irrelevant or inadmissible evidence." *Keenan*, 91 F.3d at 1279.

Second, the Court has nonetheless found the email that apparently forms the basis of Plaintiff's contract claims—a November 22, 2013 email from Ian Sears to Plaintiff. The email is reprinted below:



**Message**

| From: | Sears, Ian (US) [Ian.Sears@RalphLauren.com] |
| Sent: | 11/22/2013 5:01:24 PM |
| To: | 'vc@pacificheightsplace.com' [vc@pacificheightsplace.com] |
| CC: | Samson, Randy (US) [Randy.Samson@RalphLauren.com]; Li, William (US) [William.Li@RalphLauren.com] |
| Subject: | RE: In regards to William Li |

Dear Ms. Card:

In order to give you every opportunity to comply with our guidelines and requirements, we are willing to defer the discontinuation of your account pending your completion of our account application process. The process is standard for all of our, and our licensees', approved accounts, and the failure to remain in compliance with the requirements is a basis on which we discontinue accounts.

A member of the Ralph Lauren Home team will provide you with the "bricks-and-mortar" component of the application. As you may know, we require a compliant bricks-and-mortar presence for all of our accounts, so this portion of the application precedes the application process for online sales. William Li will facilitate this process for you.

We do not plan on exercising our right to require you to discontinue online sales during the application process. However, together with your bricks-and-mortar application, we will include a list of violations we have previously noted on the Pacific Heights Place website. These violations will need to be rectified immediately, and failure to do so will result in the denial of your application and discontinuation of sales to Pacific Heights Place.

Sincerely,

**Ian Sears**
**R A L P H   L A U R E N**
President, Home
625 Madison Ave., 9th Floor
New York, NY 10022
(212) 318-7104

(Dkt. No. 167-3.)  Drawing all reasonable inferences in Plaintiff's favor, no rational trier of fact could find that this email constitutes an offer by Defendants to continue to sell to Plaintiff for as long as she wishes, assuming she makes the required changes to her website.

"Under basic contract law '[a]n offer must be sufficiently definite, or must call for such

1    definite terms in the acceptance that the performance promised is reasonably certain.'" *Ladas v.*

2    *California State Auto. Assn*., 19 Cal. App. 4th 761, 770 (1993) (internal citation omitted).  "To be

3    enforceable, a promise must be definite enough that a court can determine the scope of the duty

4    and the limits of performance must be sufficiently defined to provide a rational basis for the

5    assessment of damages." *Id.* (internal citations omitted).  Defendants' willingness to "defer the

6    discontinuation of [Plaintiff's] account pending your completion of our account application

7    process" (Dkt. No. 167-3) does not reasonably support an inference of a definite promise to

8    continue to sell Ralph Lauren products to Plaintiff for so long as she complied with Defendants'

9    account requirements.  Likewise, that Plaintiff was required to "rectif[y] immediately" certain

10   issues with her website or face denial of her application (*id*.), does not reasonably support an

11   inference that if she did rectify the issues, Defendants promised to sell Ralph Lauren products to

12   her indefinitely.  By analogy, in the at-will employment context, to accept Plaintiff's argument

13   would mean every time an employer puts an employee on an improvement plan, the employee's

14   at-will status is converted to a guaranteed job so long as the Plaintiff satisfies the improvement

15   plan.  Plaintiff is arguing that Defendants transformed their at-will business relationship to a

16   guaranteed long-term contract by giving her an opportunity to apply for permission to sell their

17   products online.  No reasonable jury could find such an agreement on the record before the Court.

18          Plaintiff's belief that she had an open-ended "until death do us part" contract with

19   Defendants based on her prior purchases of RLH merchandise (Dkt. No. 148-1, Card Depo. at

20   64:2-8), does not raise a genuine dispute of fact.  Plaintiff admits that this purported agreement

21   was not memorialized in writing or orally.  (*Id*. at 58:21-25; 133:24-134:5.)  And the November

22   2013 email is insufficient to support a finding that Defendants held the same belief.  *See*

23   *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) ("[t]he parties' outward

24   manifestations must show that the parties all agreed upon the same thing in the same sense. If

25   there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then

26   there is no mutual consent to contract." (internal citation and quotation marks omitted)).

27          Third, Plaintiff's alternative breach of implied contract claim fares no better as Plaintiff has

28   failed to identify evidence of Defendants' conduct which would support a finding of the existence

United States District Court
Northern District of California

8

of a contract. *See Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008) ("A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct.") Plaintiff appears to argue that following the November 2013 email from Mr. Sears, she was advised that her account was approved and she then began the "extensive, and expensive, cooperative work" re-doing her website, and that somehow this conduct created a contract. (Dkt. No. 162 at 21.) This argument fails for two reasons. First, as with the express contract claim, her brief does not cite any evidence in support of that conduct. And second, assuming the evidence of the changes that were made and the cooperative work is in the record, at best it would support an inference the parties agreed to continue their long-standing business relationship. The existence of a long-standing business relationship, however, does not give rise to an implied contract without evidence from which the terms of the agreement can be inferred. *See Plastic-View Int'l, Inc. v. Eastman Chem. Co*., No. 14-07295 DDP MRWX, 2016 WL 370684, at *2 (C.D. Cal. Jan. 29, 2016), aff'd, 706 F. App'x 375 (9th Cir. 2017) ("a long-standing business relationship was insufficient to identify the essential terms of any alleged contract, such as the products or quantities to be supplied, any agreed-upon price, or any duration of or means of terminating the supposed supply contract."). Construing the evidence in the light most favorable to Plaintiff, no rationale trier of fact could find that Defendants' conduct of allowing Plaintiff to continue to purchase and resell its merchandise and providing guidance regarding how to fix her website so that she could advertise their products online created an implied contract to do business with her as long as she wished. Plaintiff's analogy to quantum meruit (Dkt. No. 162 at 2) is not persuasive as there is nothing in the record that suggests that any manufacturer, let alone these defendants, would pay for whatever changes Plaintiff made to her website.

An implied contract case cited by Plaintiff, *Gunther-Wahl Prods., Inc. v. Mattel, Inc*., 104 Cal. App. 4th 27 (2002), demonstrates the inadequacy of Plaintiff's showing. There the plaintiff claimed that the parties had an implied contract that if the defendant used the plaintiff's idea they would pay the plaintiff for that use. The appellate court found that a jury could have found an implied contract based on the plaintiff's testimony that the defendant asked him to present his idea

1    to it, the plaintiff's expectation that he would be paid for presenting his idea, and evidence as to

2    the custom in the industry. *Id.* at 36. There is no evidence here that Defendants solicited Plaintiff

3    to sell their product, nor that it is the custom in the industry to give resellers such as Plaintiff an

4    indefinite promise to sell product; to the contrary, the evidence is undisputed that it is not

5    Defendants' practice to ever enter into the type of agreement urged by Plaintiff.

6                                        ***

7         At bottom, Plaintiff's contract theory is that "the party you purchased [inventory] from is

8    obligated to continually sell the product." (Dkt. Nos 148-1, Card Depo. at 46:25-47:7; 72:18-23;

9    132:21-133:2.) That theory, however, has no basis in the law; rather, as Plaintiff repeatedly

10   testified, it is based on "ethics." (*Id.*) A party's view of what is ethical, however, is not a legal

11   ground for contract formation. As Plaintiff has failed to offer evidence which creates a dispute of

12   fact regarding whether the parties' entered into an express or implied contract, Defendants are

13   entitled to judgment as a matter of law on her breach of contract claim.

14        **B. Breach of the Implied Covenant of Good Faith and Fair Dealing**

15        Plaintiff's breach of the implied covenant of good faith and fair dealing claim is dependent

16   upon her breach of contract claim and thus fails as a matter of law as well. *See Racine & Laramie,*

17   *Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992), reh'g denied and opinion

18   modified (Jan. 6, 1993), as modified on denial of reh'g (Mar. 25, 1993) ("There is no obligation to

19   deal fairly or in good faith absent an existing contract.").

20        **C. Robinson-Patman Act**

21        The Robinson–Patman Act of 1936, 15 U.S.C. § 13, prohibits price discrimination that is

22   likely to have an anticompetitive effect. In essence, the Act makes it unlawful for a seller to

23   discriminate in price between purchasers of similar commodities when the price discrimination

24   results in competitive harm. *See, e.g.*, *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842

25   F.2d 578, 584 (2d Cir. 1987). Accordingly, to state a claim under the Robinson–Patman Act, a

26   plaintiff must allege: (1) two or more contemporaneous sales by the same seller; (2) at different

27   prices; (3) of commodities of like grade and quality; (4) the discrimination had the requisite

28   anticompetitive effect; and (5) the discrimination caused injury to the plaintiff. *Rutledge v. Elec.*

United States District Court
Northern District of California

10

1   *Hose & Rubber Co.*, 511 F.2d 668, 677 (9th Cir. 1975).

2         The Robinson–Patman Act "does not ban all price differences charged to different

3   purchasers of commodities of like grade and quality[]; rather, the Act proscribes price

4   discrimination only to the extent that it threatens to injure competition." *Volvo Trucks N. Am., Inc.*

5   *v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006) (internal citation and quotation marks

6   omitted).  "Primary-line cases entail conduct—most conspicuously, predatory pricing—that

7   injures competition at the level of the discriminating seller and its direct competitors." *Id.*  In

8   contrast, secondary line cases such as this "involve price discrimination that injures competition

9   among the discriminating seller's customers (here, [Ralph Lauren wholesalers]); cases in this

10  category typically refer to 'favored' and 'disfavored' purchasers." *Id*. "A hallmark of the

11  requisite competitive injury, . . .  is the diversion of sales or profits from a disfavored purchaser to

12  a favored purchaser." *Id*. at 177. Alternatively, a plaintiff may allege that a favored competitor

13  received "a significant price reduction over a substantial period of time" to support a permissible

14  inference of competitive injury. *Id*. (internal citation and quotation marks omitted).

15        Defendants insist that they are entitled to judgment in their favor on Plaintiff's Robinson-

16  Patman claim because (1) she has failed to offer evidence of two or more contemporaneous sales,

17  and (2) she has not offered evidence of injury to competition because the undisputed facts

18  demonstrate that Plaintiff and the other resellers she identifies are not similarly situated. *See*

19  *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 102 (a party moving for summary judgment may meet

20  its burden by showing "that the nonmoving party does not have enough evidence of an essential

21  element to carry its ultimate burden of persuasion at trial").

22        **1) No Evidence of Two or More Sales**

23        The first requirement of a Robinson-Patman claim is evidence of "[t]wo or more

24  contemporaneous sales by the same seller."  *Rutledge*, 511 F.2d at 677 (internal citations omitted).

25  On this element, Plaintiff's opposition brief states: "As to (1), Plaintiff herein has shown five such

26  sales."  (Dkt. No. 162 at 29.)  Plaintiff, however, does not cite to evidence reflecting any such

27  sales.  As discussed above, the Court need not, and will not, "scour the record in search of a

28  genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White*

United States District Court
Northern District of California

11

1    *v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (explaining that the court need not

2    "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade

3    through and search the entire record for some specific facts that might support the nonmoving

4    party's claim").  Not only does Plaintiff's opposition not cite to any such evidence, she testified

5    that she does not have such evidence:

6    > Q:    And so what I'm trying to determine is whether Ms. Card has
7    >        any evidence or is aware of any evidence that, in fact, One
8    >        Kings Lane or anyone else purchased the same product from
8    >        Ralph Lauren that you purchased from Ralph Lauren in a
8    >        circumstance where it was at or around the same time and they
9    >        got a discount that you did not get.
9    > A:    We have not been shown any discovery on that.

10   (Dkt. No. 148-1, Card Depo. at 263:22-264:5)

11   > Q     Are you aware of any particular sales that you lost because the
12   >        Ralph Lauren branded stores were able to purchase at a deeper
12   >        discount than you were?
13   > A:    I wouldn't have knowledge of that. If I saw their records, I
13   >        might be able to help you.
14   > Q:    Are you aware of any sales that you lost because One Kings
15   >        Lane was able to purchase the same products you purchased
15   >        at a deeper discount?
16   > A:    I would not know that unless I saw the records.

17   (*Id.* at 267:3-13.)  At summary judgment, the nonmoving party "must present significant probative

18   evidence to support its claim or defense."  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952

19   F.2d 1551, 1558 (9th Cir. 1991) (internal citation and quotation marks omitted).

20        While not cited in Plaintiff's opposition brief, Defendants note that Plaintiff's declaration

21   references an Exhibit OOO which she attests "is a true and correct copy of OKL sales discounted

22   prices and prices I was charged for the same merchandise at or about the same time."  (Dkt. No.

23   165, Card Decl. at ¶ 87.)  Exhibit OOO, however, is a collection of screenshots which appear to

24   show different furniture items for sale, but the source of the information in this document is not

25   clear, there are no dates, no way to tell that the same products are being identified, and no showing

26   of authenticity; in short, nothing which demonstrates that Exhibit OOO is either admissible or

27   probative evidence of anything.  (Dkt. No. 171-7.)  "[U]nauthenticated documents cannot be

28   considered in a motion for summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773

1    (9th Cir. 2002).

2         Likewise, Plaintiff's declaration which appears to list items that were sold by both Pacific

3    Heights Place and One Kings Lane in 2011 and 2012 is insufficient to create a dispute of material

4    fact on the issue of two or more contemporaneous sales because her declaration does not establish

5    that she has personal knowledge of the prices at which Defendants sold product to One Kings

6    Lane.  (Dkt. No. 165, Card Decl. at ¶¶  88, 91.)  *See Villiarimo v. Aloha Island Air, Inc*., 281 F.3d

7    1054, 1059 n. 5, 1061 (9th Cir. 2002) (holding that the district court properly disregarded the

8    declaration that included facts beyond the declarant's personal knowledge and did not indicate

9    how she knew the facts to be true); *F.T.C. v. Publ'g Clearing House, Inc*., 104 F.3d 1168, 1171

10   (9th Cir.1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting

11   evidence, is insufficient to create a genuine issue of material fact.").

12        Because Plaintiff has failed to offer any evidence in support of the first element of her

13   Robinson-Patman Act claim, Defendants are entitled to judgment on this claim.

14        **2) No Evidence of Injury to Competition**

15        Plaintiff's Robinson-Patman Act claim also fails because she has not shown an injury to

16   competition.  "In order to establish the requisite competitive injury in a secondary-line case,

17   plaintiff must first prove that, as the disfavored purchaser, it was engaged in actual competition

18   with the favored purchaser(s) as of the time of the price differential."  *Best Brands Beverage, Inc.*

19   *v. Falstaff Brewing Corp*., 842 F.2d 578, 584 (2d Cir. 1987) (collecting cases); *see also M. C. Mfg.*

20   *Co. v. Texas Foundries, Inc*., 517 F.2d 1059, 1066 (5th Cir. 1975) ("to constitute a Robinson-

21   Patman wrong, the price discrimination must occur between competitors in comparable

22   transactions i.e., where persons receiving the different prices are in actual, functional competition

23   with one another and it must have the requisite effect upon actual or potential competition.").

24        Plaintiff appears to identify One Kings Lane as the entity with whom Pacific Heights Place

25   was in competition; however, there is no evidence that Pacific Heights Place and One Kings Lane

26   were competitors.  Plaintiff herself testified that as a "brick-and-mortar store" she did not have the

27   "capability" to operate like One Kings Lane.  (Dkt. No. 148-1, Card Depo., 243:16-25; *see also id*.

28   at 238:16-17 "I'm not saying that my business was Bloomingdale's nor was it One Kings Lane,

United States District Court
Northern District of California

1  but we were all selling the same product.").  Defendants, for their part, testified that they were not

2  in competition—One Kings Lane was an off-price account "which could liquidate large quantities

3  of discontinued and/or excess products" and Pacific Heights Place, as a full-price account, was not

4  "permitted to sell RLH furniture products at more than 30% below MSRP on a regular basis."

5  (Dkt. No. 147-4, Jokinen Depo. at ¶¶ 4, 5; *see also* Dkt. No. 148-1, Colgan Depo. at 25:5-19

6  (testifying that Pacific Heights Place was a "full-price account…[t]he expectation of full-price

7  accounts is that they are not advertising the brand at a discounted price."); *Id*. at 35:4-13

8  (testifying that One Kings Lane was "considered an off-price account because they were primarily

9  a promotion website and, you know, sold off excess…inventory.").)

10       Plaintiff has not offered any evidence to rebut this showing and instead argues:

11           Plaintiff WAS in functional competition with OKL, simply because
              the sales information produced by Defendants show that, for all the
12            David vs. Goliath differences between them, the sales figures for
              Plaintiff and OKL were roughly comparable, but also because, as
13            shown by those numbers, as well as by the obvious facts of online
              retail commerce of which the court is requested to take Judicial Notice
14            [under FRE 201(b)], that an effect of the internet is to allow retail
              sellers much greater ability to compete with much larger sellers -
15            largely due to Aps such as Google AdWords which can make smaller
              sellers often as likely to appear in a search as larger ones [especially
16            in narrow markets as herein], such that size and other differences,
              especially geographic are minimized, and superior quality of a smaller
17            seller is therefore more likely to be available to customers anywhere
              on the planet, at any time.

18  (Dkt. No. 162 at 20.)  As discussed above, the Court need not, and will not, "scour the record in

19  search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  To

20  the extent that Plaintiff asks the Court to take judicial notice of the "obvious facts of retail

21  commerce," such a request is improper. While courts may judicially notice an adjudicative fact if

22  it is not subject to reasonable dispute because it: "(1) is generally known within the trial court's

23  territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

24  accuracy cannot reasonably be questioned" *see* Fed. R. Evid. 201(b), Plaintiff's vague reference to

25  the "obvious facts of retail commerce" fails to satisfy any aspect of this standard.  Plaintiff has

26  thus failed to offer any evidence that she and One Kings Lane were similarly situated competitors.

27                                        ***

28

United States District Court
Northern District of California

1         Accordingly, as Plaintiff has failed to offer evidence which creates a dispute of fact

2    regarding her Robinson-Patman Act claim, Defendants are entitled to judgment as a matter of law

3    this claim.

4    <center>**CONCLUSION**</center>

5         For the reasons stated above, Defendants' motion for summary judgment is GRANTED.

6    (Dtk. No.148.)

7         The parties' administrative motions to seal are GRANTED.  (Dkt. Nos. 147, 161.)

8         Judgment will be entered in Defendants favor by separate order.

9

10        **IT IS SO ORDERED.**

11   Dated: September 27, 2021

12

13   *Jacqueline Scott Corley*

14   JACQUELINE SCOTT CORLEY
     United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28